Case number 253345, White's Landing Fisheries Inc, et al. v. Ohio, et al., argument not to exceed 15 minutes per side. Mr. Keschner, you may proceed for the appellant. Good afternoon, Your Honors. George Keschner for White's Landing. I have reserved 5 minutes for rebuttal. Your Honors, I think the central issue in this matter, and possibly the reason why this Court wanted argument here, is the issue of how Loper-Bright is applied to state agency law. And fortunately... Tell us again how you think Loper-Bright is applicable. I will. This was a federal delegation to the state of Ohio. It comes from the Fisheries and Wildlife Act of 1956. In that act, it specifically, well, it states the purpose of the act, which I will get into presently, but it delegates the enforcement to the various states. The ones basically around the Great Lakes. Now, what I would say to the Court is, okay, these powers come from federal statute. Now, they are delegated. But does that delegation take them out of the realm of federal law? I don't believe it does. Because the power to do this is coming from federal law. So basically, the state of Ohio is acting as an agent for the United States Department of the Interior. And therefore, while there may be some procedural items that the state of Ohio can impose on its own... I'm struggling because doesn't this come down to the activity of the Commission? It does, Your Honor. What happens here, right? Yes, however, you said it exactly right. It comes down to the activities of the Commission. It comes down. Where does the Commission draw its power in this particular instance? It draws it from federal statute. But the federal statute doesn't say what the local entity may or may not do. It just delegates to that entity the ability to look at all the circumstances. Is that incorrect? I think it is. What functions in light of all of the people who have an interest in those waters and those creatures in the waters? I would say it does. There's more to it than that. Does delegation mean you take a power you have and you pass it on to somebody else so that somebody else has that power? Isn't that where we are in this case? We are. However, Your Honor, let me analogize it. What aspect of this structure means that we're still looking to the delegating entity as the relevant entity? I will tell you. 16 U.S.C. 742A states the purpose of the Fish and Wildlife Act. Now, the power is delegated, but the delegation is supposed to support the purposes of the act. If it wasn't, what would we even have a federal delegation for? The states would just do whatever they please. There are parameters that the state has to follow, and those parameters have to do with the statement of purpose in the Fish and Wildlife Act. And I would segue, and I think this is consistent with this Court's opinion, and I've cited Pickens v. Hamilton Riker, where this Court says, what should a court do then when asked to review whether an agency has permissibly exercised delegated discretion? Loeb or Bright tells us, a court plays its part, one, recognizing constitutional delegations. Okay, we have a delegation here. Two, fixing the boundaries of the delegated authority. That's this Court's function. That's the function of the lower court. And three, ensuring that the agency, and this is important, has engaged in a reasoned decision-making within these boundaries. Now that is the law. That is the federal law concerning agency action. Now, I'm struggling with why, in this situation, the capability or the authority to do those actions has been handed to, through a large group that is in fact the group of entities that does set those parameters. We've got the Ohio Administrative Code. We've got the Ohio Revised Code. They are, the rules that are established are under the authority of the Division of Wildlife Chief. And these are all state entities that end up functioning through a commission that can oversee all of the needs of the area. How is that controlled by a federal law? Well, Your Honor, without the federal law, they would have no authority to do any of those things. Well, but if that's the argument, then all of the rights that are appended to states or granted by federal legislation means that we don't have to sue the state. We just turn around and sue the feds every time. I think you're right. And it doesn't seem to me to make sense. I think you're absolutely right, Your Honor. So... Yes, I'm saying that. If you ask me am I blatantly saying it, yes I am. But what's your best case to support that? Again, I think just Loper-Bright itself. And I would think that this court's decision also in Pickens, it lays out the parameters for judging state action, state administrative action. What I can tell, and I will say this, Ohio also has rejected the Chevron test. Ohio has also an Administrative Procedure Act, which is similar to the federal act. If the federal courts said once delegation is done, the feds are out of it, what do we need the feds for? And there is a purpose to this act. It's stated at the very beginning, like I said, in section 16 U.S.C. 742A, where it talks about commercial fishermen and sport fishermen. It discusses them both, but it gives no priority. In other words, if there are certain purposes that I'm giving authority to an agent for, that agent has to fit within the reasons I'm delegating the authority to them, or what kind of relationship will we have? We just cut them loose and they do what they please? It in fact wants delegated not a relationship any longer because the entities that know what happened in Ohio, the entities who have expertise in Yellow Perch and other creatures in the waters, expertise in what people in Ohio and all of the surrounding, and the water surrounding them, what stake those public citizens have in the decisions regarding the water in their own state, isn't everything decided at that level? No. I'm struggling with what if we wanted to bring a lawsuit against the federal entity who did not do any of those activities or even understand what goes on at the local level, how would you propose that be litigated? Well, Your Honor, in any agency relationship, do you get to just walk away from your agent? Do you get to just say, hey, I gave you the authority, I'm done? It's an agency relationship. The United States is primary on this, on the control of fish and wildlife within the borders of the United States of America. It delegates, yes, to the various states and the Great Lakes Association. Bob's giving up of power by the one who is delegating, correct? I'm sorry, Your Honor, I misunderstood. Delegation involves a giving up of power, right? No. Oh, okay. No. Again, Your Honor, if I have an agent and I tell them to do a certain thing, I want a certain goal accomplished, I'm responsible for that. Even if they do something, look, you're not totally washing your hands of your agency relationship. That's not possible. And what I think we're being asked to do here is to say that very thing. Again, basic agency law. Do you get to walk away from the activities of your agent? No. What is your source for believing this is the type of agency relationship you are describing? My source would be the act itself, the Fish and Wildlife Act of 1956. It says at the very beginning what it's doing. That would be my source. And I would refer the court to that. Okay. Mr. Cashmere. Oh, yes, the red light. I'm sorry. Thank you. May I proceed? You may. Casey Chapman for the Appellees State of Ohio, the Ohio Department of Natural Resources, Director Mertz and Chief Wecker. We're here today for the second time before this court where Mr. Cook is asking this court to hold that the State of Ohio is civilly liable for promulgating rules that are designed to protect its natural resources. And for the second time, we ask this court to affirm the dismissal of Mr. Cook's claims by the district court. His claims fail for three reasons. First, they're barred by sovereign immunity. Second, without a federal claim, there's no basis for supplemental jurisdiction over his claims of conspiracy and breach of fiduciary duty. And third, even if the court were to reach the merits, Mr. Cook's claims fail because there's no cognizable property interest in uncaught fish. I'll start with the threshold issue of sovereign immunity. The 11th Amendment, of course, bars suit in federal court against a state or its officials acting in their official capacities unless the state consents or Congress revokes that immunity, neither of which has occurred here. Mr. Cook's claims against the agency and its employees in their official capacities are textbook examples of where sovereign immunity applies. The Supreme Court has consistently reaffirmed this principle, including in Kentucky v. Graham, where it applies to state officials. This court has held the same, most recently in Ladd, where it held that sovereign immunity extends to state officials and that it protects states from taking claims for damages in federal court. The court upheld the principle of sovereign immunity again in 2021 in Cook v. Department of Natural Resources, where Mr. Cook appealed the district court's dismissal of a damages claim against the Ohio Department of Natural Resources and its chief and director, where he argued that the case was improperly dismissed by the district court because sovereign immunity is unconstitutional. This court disagreed and affirmed the district court's dismissal. This time, Mr. Cook is attempting to sidestep the constitutionally enshrined principle of sovereign immunity by citing Loeber-Bright and Twissem, but those cases concern judicial deference to agency interpretations of their regulations, not sovereign immunity. The district court correctly recognized that they don't have any bearing here. This case isn't about interpreting a regulation. The parties agree on what the regulation says. Mr. Cook just disagrees with the policy outcome behind it. That's not a basis to override constitutional immunity. Once that federal takings claim is barred by sovereign immunity, there's no anchor for supplemental jurisdiction. Without a federal cause of action, dismissal of the state claims is proper under the supplemental jurisdiction statute. Further, these claims asserted against the individuals would be dismissed under qualified immunity. But even if the court were to reach the state law claims, the district court correctly found that they were insufficiently pled. Mr. Cook alleges no facts that establish a special relationship that would give rise to a fiduciary duty, and the state's duty is to the public at large, not to any individual license holder. As for conspiracy, the complaint is devoid of any specific factual allegations as to what malicious agreement there was or as to what underlying unlawful act occurred. Vague and conclusory assertions are not enough under Feger v. Cox. And as this court previously affirmed in Cook v. O.D.N.R., Mr. Cook's prior conspiracy case against the department and its employees. And lastly, even if Mr. Cook could overcome the sovereign immunity and the jurisdictional hurdles, his claims still fail on the merits. As the Ohio Supreme Court held in Hanlon and the Sixth District Court affirmed in Madison Street Fishery, the right of the state to regulate and control the taking of fish in public waters is a right that's so universally recognized and so uniformly affirmed that it cannot now be questioned. It's within the police power of the state to protect its natural resources, and there's no private ownership of uncaught fish. Ohio law is clear. Wild animals, including fish, are owned by the state and trust for the people. Ownership transfer is only upon lawful capture, and until then, there's no private property interest. This is codified in 15-3102 and has been reaffirmed for over a century. In Madison Street Fishery, the district court upheld the dismissal of a takings claim by commercial fishermen regarding yellow perch quotas, reaffirming that uncaught fish are not private property and that ownership is in the state until reduced to actual possession. Mr. Cook also lacks a compensable property interest in his commercial fishing license. He seeks damages for something that he has never had, the ability to harvest yellow perch with a SANE license. SANE licenses have never been allocated a yellow perch quota, nor have they been eligible to receive one via transfer. Yet Mr. Cook asked this court to compensate him for something that he has never had. Licenses subject to regulatory oversight, limited transferability and revocation aren't protected property rights under the takings clause, just as licenses or permits to fish or hunt or they're a privilege, not a right. And other courts across the country who have dealt with this issue have reached that same conclusion. Even assuming that a property interest existed, no taking occurred. The regulation at issue here that's being complained of, 1501.31.312, doesn't revoke Mr. Cook's license. It merely clarifies the method by which he can fish and that SANE licenses cannot be used to harvest yellow perch. The license remains valid. If the district court was correct to dismiss these claims, did it err in dismissing them with prejudice? No, Your Honor. I think for a variety of reasons that qualified immunity applies to any of the claims against the individuals, and that's clearly sovereign immunity applies to everything else. This is a textbook example of where sovereign immunity applies. But then in the alternative, they failed to state a claim. And I think the court held as well that... If it was a standing argument that led to this, wouldn't the resolution be to vacate the district court's holding on the state claims and remand with instructions that they should be dismissed without prejudice? Your Honor, I think the district court took multiple avenues in why it dismissed Mr. Cook's claims. And so what avenue do you light on should be the one that governs this case? I like sovereign immunity. I think that's the most clear question. And then I think the next argument that I like that we had originally put in our motion to dismiss before the court asked for supplemental briefing is the state's police power. So, Your Honor, I think that it's clear that this is a conservation measure and it's not a confiscation. Mr. Cook's reliance on Great Lakes versus commercial fishermen is misplaced. That was a due process case, not a takings case. And even still in that case, Great Lakes held that the plaintiff had a legitimate claim of entitlement to fish in accordance with the terms of the member's license, and Mr. Cook's same license has never been allocated a quota of yellow perch. So this is not Mr. Cook's first challenge to Ohio's fisheries regulations. The district court rightly described this case as baseless and considered sanctions. The state has a duty to protect its natural resources, including regulating how, when, and by whom fish may be taken from Lake Erie. Do you understand that all of that is a power of the state as opposed to a power of the federal government? I think it is more clearly laid out in our brief, but I think there might be a disconnect on how the Great Lakes Fishery Commission operates with regard to its members. So the Great Lakes Fishery Commission makes recommendations, and then the members, including Ohio, who both have statutory authority to make regulations and then rules as well that guide them, make those decisions that conserve the natural resources that are often based on the recommendations of the Great Lakes Commission. Unless there are any other questions, my argument is concluded. Thank you. Thank you. Your Honor, let me address the property issue briefly because that's not where I want to go with this. But this court, this circuit, and the judges at the Northern District of Ohio have held that the license is a property right. And in fact, in Great Lakes Fishermen, it said not only was the license a property right, but the fish. Now, I think there's obfuscation here. If the property right is the license, the license is worth something. As they said in Great Lakes Fishery, you pay for that license, you get certain rights. Okay. If a whole category of fish are taken away, that's a diminution of the value of that license. So that is indeed a taking. I think talking about uncaught fish is just, it's not the point. The point is the license is the property interest. And how do you distinguish your situation from the Eighth, Fifth, and Federal circuits that have found that loss of value in a license cannot be the basis of a takings claim? You know, Your Honor, this court has found that it is. So I'm going to go with this. I would agree, and I think the briefing shows that some of the Ohio cases say there's some right, but it does not result in the kind of loss that is necessary. Others say there is no right in that license to uncaught fish. Some cases do say that. But, again, this court has said that that license is a property right. Now, I would say, well. What case are you referring to? Gosh, I don't have it in front of me right now, but I did cite it, Your Honor. It was in Great Lakes Fishery, and the court cited it to a couple. Oh, I'm sorry. I think you're, no, I don't have it off the top of my head. But we did cite it. The other thing I would say is this. Remember, this was a 12B6 motion. And my statement would be this. We're too early in the process to determine if there isn't a loss. Loss of fishing, of a whole class of fish, can be quantified. Historically, you know, with past catches, with past years' evaluations, you know, we never got the chance. Well, what about the state's argument? And Ms. Chapman has said she believes it's their strongest argument, that they have sovereign immunity. Well, they gave it away in Chapter 119. They have an APA also, which allows them to be sued. And under the APA, and this is covered in Loper-Bright, under the federal APA, Section 706 allows for constitutional claims to be brought. Ohio has a similar APA. It's Chapter 119. So I would say, no, there's no sovereign immunity claim. They gave it away. They allowed it. And that's exactly what Loper-Bright is about. Why do agencies... Do you have the language in 119? No, I do not, Your Honor. I'm sorry. But it's in Chapter 119. And in your general understanding, what does that say? What that says is it tracks the federal... Does it waive our immunity? Yes, because you're allowing people to question, just as under the federal APA, you're allowing people to question agency action. You're giving a vehicle. If we didn't have an APA in the federal arena, how could you challenge agency action? What would you do? The APA allows you to bring suit. Now, again, the APA is not self-activating. You have to have an underlying either statute or constitutional right. But Ohio's APA is similar. And again, you have a constitutional right here. There is a taking. Now, again, I think this is a Fifth Amendment taking. This court has recognized that right. The Northern District itself says that it's a property right. And it is quantifiable. And what I would say is we are too early in the process for a dismissal based on any of this. I think the court has not followed its duty to review the agency action. And, again, as you had said, Your Honor, dismissing with prejudice, I think that's a bit premature. Again, I would say that. And I think that we're still, again, to go back to the delegation process, and I'm out of time, but I'll just finish up. If I have an agent and I tell them, you know, I want you to do, I need to have something done, this is what I want done, and the agent goes off and does something completely different. They're not exercising my delegated authority correctly. And in this case, the Fish and Wildlife Act of 1956 tells why they're passing on this authority. And if you don't stay within those parameters, what kind of agent are you? And that's precisely what Loper Bright is about. Thank you, Your Honors. Thank you. Counsel, thank you for your preparation and for your argument. The case will be submitted.